IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

KIM HILL,

    Plaintiff,

vs.                                                      Case No._____

MAYOR JEFF PORTER, individually,
and the CITY OF HOMESTEAD,
a political subdivision of the State of Florida,

    Defendants.
_____/

## COMPLAINT FOR DECLARATORY RELIEF AND MONETARY DAMAGES

**Nature of the Case**

1. This is a civil rights action for declaratory relief and money damages pursuant to 42 U.S.C. § 1983, the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and under the laws of the State of Florida against the City of Homestead and former and current officials of that city.

2. This action is brought by KIM HILL, a community activist, against the CITY OF HOMESTEAD and its MAYOR JEFF PORTER, for their actions in punishing and retaliating against HILL for engaging in constitutionally protected advocacy during public comment before the Homestead City Council by: (1) causing him to be physically removed, restrained, detained and prospectively barred from future City Council meetings; (2) doing so on the basis of a Decorum Policy that relied on vague, undefined behavioral criteria, imposed a prior restraint, and was, in any event, no longer in effect; and (3) without providing him a meaningful opportunity to challenge the prospective bar or with notice as to any process he could use to obtain permission to reappear before the City Council in the future.

## Jurisdiction and Venue

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as well as supplemental jurisdiction under 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b).

5. All conditions precedent to the filing of this action pursuant to §768.26 Florida Statutes have been met.

## Parties

6. KIM HILL was at all material times a resident of the City of Homestead, Miami-Dade County, Florida and a citizen of the United States.

7. Defendant CITY OF HOMESTEAD is a municipal corporation and political subdivision of the State of Florida. HOMESTEAD'S governing body is its City Council in which is vested final policy-making authority for the city.

8. Defendant JEFF PORTER was at all material times the MAYOR of HOMESTEAD acting under color of state law, and, as such, was ultimately responsible for all policy matters of city government, for the conduct of all police officers and other officials in the employ of the city, and for ensuring that all such employees as well as the CITY of HOMESTEAD itself obeyed the laws of the State of Florida and of the United States. Defendant MAYOR PORTER is being sued in his individual capacity.

## Statement of Facts

**A. Background: HILL'S Advocacy During City Council Meetings**

9. The Homestead City Council meets once a month in the Council Chambers at Homestead City Hall to conduct city business. A portion of each meeting is set aside for public comment during which members of the public are invited to speak directly to the Mayor and City Council on any matters of public interest about which the member wishes to speak.

10. In the summer of 2015, after an African-American resident of Homestead was shot and killed by a white HPD officer, HILL, a community activist who lives and teaches public school in Homestead, began attending Homestead City Council monthly meetings to complain about this shooting and to urge, among other things, that HPD officers be equipped with body cameras. Over the next year, as HILL continued to advocate at City Council meetings for this reform, he was met with increasingly negative reactions from various Homestead officials, including defendant MAYOR JEFF PORTER.

**B. HOMESTEAD'S August 24, 2016 Decorum Policy**

11. On August 24, 2016, HILL once again attended and spoke during public-comment at that date's City Council meeting. Posted at the top of the agenda for that meeting was a Decorum Policy enacted by the Homestead City Council, setting forth procedures regarding the conduct of persons who appear before that body. That posting stated in its entirety the following:

> **DECORUM POLICY:**
> **Any person making impertinent or slanderous remarks, or who becomes boisterous while addressing the council, shall be barred from further audience before the council by the Mayor, unless permission to continue or again address the council be granted by the majority vote of the council members present. No clapping, applauding, heckling or verbal outbursts in support or opposition to a speaker or his or her remarks shall be permitted. No signs or placards which may harm or obstruct the view of others shall be allowed in the council chambers. Persons exiting the council chambers shall do so quietly.**

12. That Policy (hereafter the August 24th Decorum Policy") contained two noteworthy omissions:

(a) While asserting that "making impertinent…remarks" or "becom[ing] boisterous" constituted grounds for "the Mayor" to "bar[…]" a speaker "from further audience before the council," it provided no definition of "impertinent remarks" or "boisterous" behavior; and

(b) It failed to set forth any procedure[s] as to when, how or on what basis a "barred" speaker could seek to obtain a "majority vote of the council members present" granting him "permission to . . . again address the council" at some time in the future.

13. The August 24th Decorum Policy was the same Policy that had been posted at the top of the agenda for every Homestead City Council meeting held during the year 2016, until the City Council's November 16, 2016, meeting, at which time the language under the heading "Decorum Policy" was changed.

14. When HILL appeared and spoke during public comment at the August 24, 2016, City Council meeting, he knew that the August 24th Decorum Policy was applicable, not only because it was posted at the top of the agenda for that meeting, but also because he had previously attended numerous City Council meetings at which the identical Decorum Policy had been posted at the top of the meeting agenda.

15. However, four months earlier, on April 20, 2016, the City Council had approved a resolution "enacting revised comprehensive council meeting and agenda procedures" (Resolution No. R2016-04-42) (hereafter "the revised Resolution") to "supersede and replace all previous Resolutions regarding Council meeting procedures." Under a section headed "City Council Meetings," the revised Resolution deleted the language contained in the August 24th Decorum Policy and, in its stead, set forth the following:

Rules of Decorum:

> In order to ensure that meetings of the City Council may be conducted in a manner that allows the business of the City to be effectively administered the following rules of decorum shall be followed at all meetings of the City Council:
> (a) No individual shall make slanderous or unduly repetitive remarks or engage in any other form of behavior that disrupts or impedes the orderly conduct of the meeting as determined by the Mayor and or Sergeant at Arms.
> (b) No clapping applauding heckling or verbal outbursts in support or opposition to a speaker or his or her remarks shall be permitted
> (c) No signs or placards shall be permitted in the Council Chambers

4

(d) Individuals addressing the Mayor and Council must first be recognized by the Mayor and must do so utilizing the designated podium in the Council Chamber No more than one person may address the Council at a time unless specifically permitted by the Mayor. Only those individuals recognized by the Mayor may stand at the podium

(e) No person may stand in or on the isles the well or the dais. Individuals waiting to be recognized shall wait in an area designated by the City

(f) Persons exiting the council chambers shall do so quietly

(g) Any individual determined to have violated the Rules of Decorum as determined by the Mayor or Sergeant at Arms may be required to leave the Council Chambers.

16. The revised Resolution changed the rules of decorum to be followed at City Council meetings in the following relevant ways:

(a) it eliminated "making impertinent …remarks'" and "becom[ing] boisterous" as grounds for barring a speaker from addressing the City Council; and

(b) it eliminated the requirement that for a barred speaker "to continue or again address the council" the speaker must obtain "permission…granted by the majority vote of the council members present."

17. The new rules of decorum set out in the revised Resolution were not posted at the top of the agenda for any City Council meeting until November 16, 2016, when they were posted for the first time under the heading "Decorum Policy."

**C.  Actions Taken Against HILL in Response to His Public Comment on August 24, 2016**

18. During public comment at the Homestead City Council meeting on August 24, 2016, HILL rose and spoke before the City Council for three minutes, during which time he: complained that African-Americans were being "slaughtered" by the HPD; once again advocated that HPD officers be equipped with body cameras; objected to HPD officers addressing the City Council in uniform because doing so was intimidating to civilians appearing before the Council; and criticized Councilman Elvis R, Maldonnado for insisting on a prior occasion that he

5

(Maldonnado) could not be racist, pointing out that there are no black leaders in Colombia, Maldonnado's country of origin.

19. During his three minutes of public comment before the City Council on August 24, 2016, which were captured on video, HILL did not disrupt or impede the orderly conduct of the meeting or engage in any behavior that could be deemed criminal or in any way support a determination of probable cause to believe, or even reasonable suspicion, that he had committed a crime.

20. Immediately upon finishing his public comment before the City Council and taking his seat in the audience, HILL was surrounded by several HPD officers, told he was "under arrest," and immediately escorted out of the Council Chambers and from there out of City Hall.  Once outside, while continuing to surround HILL, the HPD officers notified him that he "was trespassed" and ordered him to leave, at which point HILL departed from the area.

21. The HPD Field Contact card, dated August 24, 2016 at 18:22, describing the police interaction with HILL that date, states:

> **Mr. Hill violated the decorum policy by becoming impertinent and boisterous while addressing the council.  Mr. Hill was informed that he was trespassed**.

As documented by that HPD Field Contact card, the actions of the HPD officers taken against HILL on that date were taken in order to enforce the August 24th Decorum Policy.

22. The actions of the HPD officers on August 24, 2016, taken to enforce the August 24th Decorum Policy by physically surrounding and removing HILL from the City Council meeting, must have been taken at the explicit or implicit direction of defendant MAYOR PORTER given that, under the express terms of that Policy, only the Mayor was authorized to initially "bar[…]" a speaker "from further audience before the council."

23. The actions of the HPD officers on August 24, 2016, in imposing an open-ended trespass order upon HILL were taken either at the explicit or implicit direction of defendant

6

MAYOR PORTER or at their own direction to further carry out defendant MAYOR PORTER'S explicit or implicit direction to enforce the August 24th Decorum Policy against HILL.

24. Furthermore, neither the HPD officers, nor defendant MAYOR PORTER, nor any other Homestead official, informed HILL of any procedure[s] as to how he could challenge or seek rescission of the open-ended trespass order and/or obtain permission under the August 24th Decorum Policy to reappear before the City Council at some time in the future.

25. As a result of the open-ended trespass order imposed upon him, and of the operation of the express terms of the August 24, 2016 Decorum Policy, HILL was prospectively barred from reappearing at any Homestead City Council meeting in the future.

**D.  Chilling Effect of Defendants' Actions Against HILL on August 24, 2016**

26. Upon being declared "trespassed" by the HPD officers, HILL feared that he would be subject to arrest if he attempted to appear before any future Homestead City Council meeting, not only because the threat of arrest was inherent in the open-ended trespass order, but also because he was aware that when another community activist, Dr. James Eric McDonough, who had been ejected from the previous month's City Council meeting, had, earlier on August 24, 2016, sought to enter City Hall, that activist had been denied access, placed under arrest for trespass, and led away in handcuffs by HPD officers.

27. In addition to the normal fear of arrest that any law-abiding citizen might experience, HILL feared that his employment as a public school teacher would be in jeopardy were he to be arrested for any reason. For the next several months, HILL'S well-founded fear of arrest kept him away from Homestead City Council meetings.

28. During that time, on HILL'S behalf, the ACLU of Miami contacted the law firm that serves as counsel to the City of Homestead to discuss what had happened to HILL on August 24, 2016. In response, in November, 2016, counsel for Homestead took steps resulting in

7

the removal of the August 24th Decorum Policy from the top of the agenda for that month's meeting and the substitution in its place of the new rules of decorum set forth in the revised Resolution that had been approved April 20, 2016. Counsel for Homestead additionally advised that HILL would now not be arrested for trespass if he were to return to City Hall in the future.

29.     With the posting of the new rules of decorum at the top of the agenda for the November 16, 2016, meeting and the assurance that he would not be arrested for trespass, HILL returned to speak on matters of public interest before the City Council at its December 21, 2016, meeting, and on many occasions thereafter.

## COUNTS

### Count I - Violation of the First, Fourth and Fourteenth Amendments to the United States Constitution, Pursuant to 42 U.S.C. §1983
### (Against defendant MAYOR JEFF PORTER, individually, for Suppression of Speech by Retaliatory Arrest )

30.     Plaintiff HILL realleges and incorporates herein by reference paragraphs 1-29.

31.     This cause of action is brought by HILL against defendant MAYOR JEFF PORTER in his individual capacity for deprivation of HILL'S constitutional rights within the meaning of 42 U.S.C. §1983.

32.     The constitutional rights at issue in this count are:

(a)     HILL'S rights under the First Amendment to speak on matters of public interest and petition the government for redress of grievances, and to engage in those constitutionally protected activities during public comment at Homestead City Council meetings without fear of punishment or retaliation against him by any government official for his doing so; and

(b)     HILL'S rights under the Fourth Amendment to be free from unreasonable seizures, and specifically to be free from physical restraint and detention imposed in response to his exercise of First amendment rights, without any probable cause to believe, or even reasonable suspicion, that he had committed a crime.

33. HILL, in speaking on matters of public interest during public comment at the Homestead City Council meeting on August 24, 2016, without disrupting or impeding the orderly conduct of the meeting, was exercising his rights under the First Amendment and was not engaging in any behavior that could be deemed criminal or in any way support a determination of probable cause to believe, or even reasonable suspicion that, he was committing a crime.

34. In direct response to, and to punish and retaliate against, HILL for his exercise of his First Amendment rights during the August 24, 2016, City Council meeting, defendant MAYOR PORTER, acting under color of state law, **applied** the August 24th Decorum Policy to HILL, so as to:

(a) directly cause HPD officers to physically restrain and detain HILL and remove him from the Council Chambers and City Hall, in violation of HILL's Fourth Amendment rights to be free from unreasonable seizures, and

(b) directly or indirectly cause HPD officers to impose upon HILL an open-ended trespass order, which, along with the operation of the express terms of the August 24th Decorum Policy, prospectively barred HILL from reappearing at any Homestead City Council meeting at any time in the future.

35. The actions described above in paragraph 34 chilled HILL in the exercise of his First Amendment rights in that, as a result of his well-founded fear of arrest, HILL did not return to speak on matters of public interest before the Homestead City Council for three months – until the August 24th Decorum Policy ceased to be posted at the top of the City Council meeting agendas and he had been assured, through the ACLU of Miami, that the threat of arrest had been lifted. Any person of ordinary firmness would have been similarly chilled.

36. As a direct and proximate result of defendant MAYOR PORTER actions and explicit or implicit directions, HILL suffered damages from the denial of his constitutional rights

under the First, Fourth and Fourteenth Amendments to the United States Constitution and is accordingly entitled to relief under 42 U.S.C. §1983.

WHEREFORE, HILL is entitled to:

    A. Compensatory damages for the physical and mental injuries suffered;

    B. Punitive damages;

    C. Reasonable expenses incurred in the litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C. §1988; and

    D. Any other remedy the Court deems appropriate.

**Count II – Violation of the First and Fourteenth Amendments to the United States Constitution, Pursuant to 42 U.S.C. §1983
(Against all defendants for enactment and implementation of
Policy that Suppresses and Imposes a Prior Restraint on Speech)**

37. Plaintiff HILL realleges and incorporates herein by reference paragraphs 1-29.

38. This cause of action is brought by HILL against defendant MAYOR JEFF PORTER in his individual capacity and against defendant City of HOMESTEAD for deprivation of HILL'S constitutional rights within the meaning of 42 U.S.C. §1983.

39. The constitutional rights at issue in this count are HILL'S First Amendment rights to speak on matters of public interest and petition the government for redress of grievances, and to engage in those constitutionally protected activities during public comment at Homestead City Council meetings, without having to meet undefined, vague behavioral criteria, and without being subjected to prior restraint;

40. The Homestead City Council, acting under color of state law, enacted the August 24th Decorum Policy at some point in the past, and on or about August 24, 2016, posted that Policy at the top of the agenda of that date's City Council meeting. In so doing, the City Council

was acting pursuant to decisions, customs and policies of defendant HOMESTEAD and as its final policy-making authority.

41.     The August 24th Decorum Policy, **on its face**, violates the First Amendment rights of any speaker or prospective speaker before the Homestead City Council by:

(a)     expressly conditioning the exercise of those rights on the speaker meeting two behavioral criteria -- (i) not "making impertinent . . . remarks," and (ii) not "become[ing] boisterous" -- that are not defined in the Policy and are inherently vague; and

(b)     immediately and prospectively "barr[ing]" any speaker determined by the Mayor to have violated the Policy "from further audience before the council" unless the speaker obtains a "majority vote of the council members present" granting him "permission to . . . again address the council" at some time in the future -- a provision that, by authorizing the City Council to deny access to it before the expression occurs, constitutes a prior restraint on the exercise of First Amendment rights.

42.     The enactment and posting of the August 24th Decorum Policy by and through defendant HOMESTEAD's final policy-making authority, *i.e.*, its City Council, constituted deliberate indifference to HILL's First Amendment rights as described in paragraph 41.

43.     Defendant MAYOR PORTER **applied** to HILL the August 24th Decorum Policy, which, by operation of the express terms of that Policy, had the effect of denying HILL his rights to freedom to speak on matters of public interest and petition for redress of grievances under the First Amendment by:

(a)     determining that HILL had violated the Policy by having "ma[de] impertinent . . . remarks" and/or having "becom[e] boisterous," when those two behavioral criteria are not defined in the Policy and are inherently vague; and

11

(b)     prospectively barr[ing]" HILL "from further audience before the council" without advance "permission" from the City Council to reappear before it at some time in the future, which -- because the City Council could deny HILL that advance permission -- subjected HILL to prior restraint of exercise of First Amendment rights.

44.     The enactment and posting of the August 24th Decorum Policy, by and through defendant HOMESTEAD's final policy-making authority, *i.e.*, its City Council, was the primary moving force behind defendant MAYOR PORTER'S application to HILL of the August 24th Decorum Policy to deprive HILL of his First Amendment rights as described in paragraph 43.

45.     As a direct and proximate result of defendant HOMESTEAD's decisions, customs and policies, and defendant MAYOR PORTER'S actions and explicit and implicit directions to HPD officers, taken pursuant to defendant HOMESTEAD decisions, customs and policies, HILL suffered damages from the denial of his constitutional rights under the First and Fourteenth Amendments to the United States Constitution and is accordingly entitled to relief under 42 U.S.C. §1983.

WHEREFORE, HILL is entitled to:

A.  Compensatory damages for the physical and mental injuries suffered.

B.  A declaratory judgment that the August 24th Decorum Policy on its face violates the First Amendment rights to speech and petition for redress of grievances in that its criteria for application are void for vagueness and it imposes a prior restraint on such constitutionally protected activities;

C.  Punitive damages;

D.  Reasonable expenses incurred in the litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C. §1988; and

E.  Any other remedy the Court deems appropriate.

**Count III - Violation of the Fifth and Fourteenth Amendments to the United States Constitution, Pursuant to 42 U.S.C. §1983**
**(Against all defendants for violations of Due Process)**

46.     Plaintiff HILL realleges and incorporates herein by reference paragraphs 1-29.

47.     This cause of action is brought by HILL against defendant MAYOR JEFF PORTER in his individual capacity and against defendant City of HOMESTEAD for deprivation of HILL'S constitutional rights within the meaning of 42 U.S.C. §1983.

48.     The constitutional rights at issue in this count are HILL'S Fifth Amendment rights not to be deprived of his liberty interest in appearing before the Homestead City Council meetings without being accorded due process of law.

49.     The Homestead City Council, acting under color of state law, having enacted the August 24th Decorum Policy at some point in the past, posted that Policy at the top of the agenda for the August 24, 2016 meeting of the City Council, notwithstanding that it had been "supersede[d] and replace[d]" by the revised Resolution enacted by the City Council four months earlier, on April 20, 2106. In so doing, the City Council was acting pursuant to decisions, customs and policies of defendant HOMESTEAD and as its final policy-making authority.

50.     The August 24th Decorum Policy, **on its face**, violates the Fifth Amendment due process right of any speaker or prospective speaker to appear before the Homestead City Council by authorizing the Mayor to determine that a speaker should be immediately and prospectively barred "from further audience before the [City C]ouncil" without providing any process: (i) as to how to challenge the Mayor's determination; and/or (ii) as to when, how or on what basis a prospectively barred speaker can seek to obtain "the majority vote of the council members present" granting him "permission to . . . again address the council" at some time in the future.

51.     The enactment and posting of the August 24th Decorum Policy by and through defendant HOMESTEAD's final policy-making authority, *i.e.*, its City Council, constituted

13

deliberate indifference to HILL's due process rights under the Fifth Amendments rights as described in paragraph 50.

52. Notwithstanding that the August 24th Decorum Policy had been "supersede[d] and replace[d]" by the revised Resolution enacted by the City Council four months earlier, on April 20, 2106, defendant MAYOR PORTER **applied** the August 24th Decorum Policy to HILL on August 24, 2016, thereby causing HILL to be placed under an open-ended trespass order, which, in conjunction with the wording of the August 24th Decorum Policy, prospectively barred HILL from reappearing at any Homestead City Council meeting at any time in the future.

53. Defendant MAYOR PORTER'S **application** of the August 24th Decorum Policy to HILL, coupled with the imposition on HILL of an open-ended trespass order by HPD officers acting on the explicit or implicit direction of defendant MAYOR PORTER, had the effect of denying HILL his right to due process of law by depriving him of his liberty interest in appearing before the Homestead City Council in that HILL was:

(a) prospectively barred from future City Council meetings based on a defunct policy that had been previously deleted from Homestead's meeting procedures;

(b) provided no procedure[s] as to: (i) how he could challenge or seek rescission of the Mayor's determination that he was prospectively "barred from further audience before the council"; (ii) how he could challenge or seek rescission of the open-ended trespass order imposed upon him; and/or (iii) when, how or on what basis he could seek advance "permission" from the City Council to reappear before it at some time in the future.

54. The enactment and posting of the August 24th Decorum Policy, by and through defendant HOMESTEAD's final policy-making authority, *i.e*., its City Council, was the primary moving force behind defendant MAYOR PORTER'S application to HILL of the August 24th

14

Decorum Policy to deprive HILL of his rights under the Fifth Amendment as described in paragraph 53.

55. As a direct and proximate result defendant HOMESTEAD's decisions, customs and policies, and defendant MAYOR PORTER'S actions and explicit and implicit directions, taken pursuant to defendant HOMESTEAD decisions, customs and policies, HILL suffered damages from the denial of his constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution and is accordingly entitled to relief under 42 U.S.C. §1983.

WHEREFORE, HILL is entitled to:

A. Compensatory damages for the physical and mental injuries suffered.

B. A declaratory judgment that the August 24th Decorum Policy on its face violated HILL'S Fifth Amendment rights to due process in that it authorized the Mayor to determine that a speaker should be "barred from further audience" without providing any process for challenging that determination and/or for obtaining permission to reappear before that body in the future;

C. Punitive damages;

D. Reasonable expenses incurred in the litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C. §1988; and

E. Any other remedy the Court deems appropriate.

### Count IV- False Imprisonment
### (State Tort against defendant CITY OF HOMESTEAD)

56. HILL realleges and incorporates by reference paragraphs 1-29.

57. This is a cause of action for common law false imprisonment, with damages in excess of fifteen thousand dollars, exclusive of costs and interest.

58.     HOMESTEAD is responsible for the actions of its police officers employed by the HPD, while those officers are engaged within the course and scope of their employment.

59.     On August 24, 2016, HPD officers, while employed by defendant HOMESTEAD and acting in the course and scope of their duties, at the explicit or implicit direction of its Mayor, caused HILL to be physically restrained and detained, by surrounding him, telling him he was "under arrest," removing him from the Council Chambers and City Hall, and continuing to surround him outside City Hall until he departed from the area in fear of being arrested for trespass.

60.     HILL did not consent to physical restraint and detention by HPD officers, and their actions in doing so were taken against his will.

61.     The actions of HPD officers in physically restraining and detaining HILL were unlawful and unreasonable in that those actions were taken:

(a)     without probable cause, or even reasonable suspicion, to believe that HILL had committed a crime;

(b)     without a warrant, or any other lawfully issued process;

(c)     even though the officers knew or had reason to know that HILL had not committed any crime;

62.     As a direct and proximate result of the actions of officers of the HPD, while employed by HOMESTEAD and acting in the course and scope of their duties, HILL suffered both physical and mental injuries and is entitled to relief.

WHEREFORE, HILL is entitled to:

A. Compensatory damages for the physical and mental injuries he suffered;

B. Costs of this action; and

C. Any other remedy the Court deems appropriate.

**Demand for Jury Trial**

Plaintiff HILL hereby demands a trial by jury on all issues triable as a matter of right.

Dated: February, 1, 2018

Respectfully submitted,

Alan J. Greenstein, P.A.
Florida Bar No. 237817
Dadeland Office Park
9200 S. Dadeland Blvd., Suite 308
Miami, Fl. 33156
Phone: 305- 772-7083
Fax: 305-938-5038
agreenstein004@hotmail.com

Jeanne Baker
Florida Bar No. 0880700
1717 N. Bayshore Drive, #3134
Miami, Fl. 33132
Phone: 305-542-7500
jbaker@fourdefenders.com

Nancy G. Abudu
Florida Bar No. 111881
Legal director
American Civil Liberties Union
Foundation of Florida, Inc.
4343 West Flagler Street, suite 400
Miami, FL 33134
Phone: 786-363-3707
nabudu@aclufl.org

**Cooperating Attorneys for Greater Miami Chapter
of American Civil Liberties Union of Florida**

By:*/s/ Alan Greenstein*
ALAN GREENSTEIN
Florida Bar No. 237817