# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

CASE NO. 18-20412-CV-KING

KIM HILL,

    Plaintiff

v.

CITY OF HOMESTEAD,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendant City of Homestead's (the "City") Motion for Summary Judgment (the "Motion") (DE 40), filed on October 7, 2019. The Court has carefully considered the Motion, Plaintiff's Response (DE 44), the City's Reply (DE 56), and is otherwise fully advised. The Court held full oral argument on February 21, 2020. (*See* DE 63).

### I. INTRODUCTION

Plaintiff brings the above-styled action under 42 U.S.C. § 1983, alleging violations of the First, Fifth, and Fourteenth Amendments to the United States Constitution. (*See generally* Compl., DE 1). Plaintiff alleges that the City of Homestead used an unconstitutionally vague "decorum policy" to prevent him from attending and speaking at the Homestead City Council meetings. (*See id.*). Primarily, Plaintiff seeks to invalidate a decorum policy that was repealed nearly two years before he filed this lawsuit and nearly four years before the present date. As explained below, the City's Motion for Summary Judgment should be granted because Plaintiff's challenge to the constitutionality of the policy is moot, and his remaining claims fail as a matter of law.

## II.　FACTS[1]

### A. Background

The City of Homestead provides a "public comment" portion of its city council meetings, allowing individuals to speak on any topic not to exceed three minutes per speaker. (Pl.'s Dep. at 29 ¶¶ 1–25, DE 39-3). Plaintiff has attended at least 85% of the city council meetings over the last four years, using the public comment portion of those meetings to advocate for police-worn body cameras. (DE 39 ¶ 12; Pl.'s Dep. at 26 ¶¶ 2–12). Plaintiff has always been afforded the full three minutes whenever he has spoken at the city council meetings. (DE 39 ¶ 32).

### B. Decorum Policy Governing Homestead City Council Meetings

On April 20, 2016, the City of Homestead passed Resolution No. R2016-04-42, which replaced the then-existing decorum policy (the "Old Decorum Policy") with a revised decorum policy (the "New Decorum Policy") to govern Homestead City Council meetings. (DE 39 ¶ 1). Among other things, the New Decorum Policy created a "Sergeant at Arms" (DE 39 ¶ 5) to maintain order at city council meetings and enforce the new policy. (Pl.'s Dep. at 45 ¶¶ 19–22). The New Decorum Policy also eliminated "making impertinent . . . remarks" and "becom[ing] boisterous" as grounds for barring a speaker from the city council meetings. (DE 39-1 at 4–6). Further, it eliminated the requirement that a barred speaker obtain "permission . . . granted by a majority vote of the council members present" before addressing the council again. (*Id.*).

### C. Plaintiff Addresses the City Council on August 24, 2016

Plaintiff attended the Homestead City Council meeting on August 24, 2016 and spoke for the full three minutes during the public comment portion of the meeting. (DE 39 ¶ 15). Plaintiff

---

[1] The following facts are taken from the City's Statement of Facts in Support of Motion for Summary Judgment (DE 39), Plaintiff's Response to Defendant's Statement of Facts (DE 46), and facts gleaned from the parties' discovery documents, viewed in the light most favorable to Plaintiff as the nonmoving party.

referred to Councilman Maldonado as a "racist" and described the city council meeting as "fascism" (Pl.'s Dep. at 49 ¶¶ 14–24), but there is no evidence in the record that Plaintiff spoke in a loud voice, or through physical gesture or demeanor, was otherwise disruptive during his speech. Although the Old Decorum Policy had been repealed in April of 2016, it was printed at the top of the agenda for the August 24, 2016 city council meeting, along with the meetings for the following months: May 2016, June 2016, July 2016, September 2016, October 2016, and December 2016 (DE 46-4). The City contends this was a mistake or "clerical error" since the Old Decorum Policy had been revoked four months earlier. (DE 39 ¶ 11).

Following his public comment, Plaintiff returned to his seat and sat down. (Pl.'s Dep. at 50 ¶¶ 1–2). At that point, several police officers approached him. (*Id.* at 52 ¶¶ 6–14). Officer Sincore told Plaintiff to get up and "come with [him]." (*Id.*). Plaintiff asked Sincore whether he was under arrest. (*Id.* at 51 ¶¶ 8–10). Sincore said "yes." (*Id.*). Then, about four police officers escorted Plaintiff out of the council chambers and outside City Hall. (DE 39 ¶ 17). Plaintiff was not physically touched by any police officer at any point during this encounter. (Pl.'s Dep. at 52 ¶ 20).

### D. Discussion Outside City Hall

Sergeant Jorge Cruz, who was the Sergeant at Arms during the August 24 meeting, saw "some sort of commotion that [caught his] eye, to [his] right out in the [] seating area." (Cruz Dep. at 16 ¶¶ 3–4 (DE 39-6 at 17)). Cruz observed "[Plaintiff] walking out [of the city council chambers], along with some officers," one of which was Officer Sincore. (*Id.* ¶¶ 6–7). Cruz then left the chambers and spoke with Plaintiff outside City Hall. (DE 39 ¶¶ 17–21).

Cruz testified that during this conversation, Plaintiff was "being very loud and irate" (Cruz Dep. at 18 ¶¶ 19–23), and he "instructed [Plaintiff] several times to calm down" but Plaintiff refused to do so. (Cruz Dep. at 19 ¶¶ 2–22). Cruz accordingly issued a "trespass" order against

Plaintiff and informed Plaintiff that he "had to leave." (Pl.'s Dep. at 59 ¶ 2 – 60 ¶ 1). Plaintiff was not informed of the reason that he "was being trespassed," (DE 39 ¶ 24), nor did Plaintiff receive a copy of any paperwork documenting the trespass order.[2] (Pl.'s Dep. at 62 ¶¶ 1–2). Plaintiff was never physically touched, handcuffed, arrested or charged with a crime because of this encounter. (DE 39 ¶ 22). None of the witnesses ever told Plaintiff not to return (or that he needed permission to return) to the city council meetings. (DE 39 ¶ 25). Plaintiff "left [the premises] immediately" after being asked to leave. (Pl.'s Dep. at 64 ¶¶ 11–13).

### E. Plaintiff Returns to City Council Meetings

Following this encounter, Plaintiff did not initially return to City Hall or attempt to address the city council. Plaintiff did not attend the September 2016, October 2016, or November 2016 city council meetings. (DE 46 ¶ 30). Plaintiff testified he believed he "would be taken to jail" if he returned to the city council meetings once he "was informed" that another individual (Mr. McDonough) was arrested for returning to City Hall after a trespass order was issued against him. (Pl.'s Dep. at 64–65). Plaintiff made no effort to return to the meetings until after his attorney contacted the City on October 28, 2016 (for the first time since the encounter), asking whether Plaintiff could attend and speak at the future meetings. (DE 39 ¶ 28). Responding on November 1, 2016, the city attorney informed Plaintiff's counsel that there were no restrictions on Plaintiff's ability to attend and speak at city council meetings "other than those applicable to the general public." (DE 39-8 at 3). Plaintiff returned to the city council meetings beginning in December 2016. (DE 46 ¶ 30). Since then, Plaintiff has never been interrupted or prevented from speaking before the city council. (DE 39 ¶ 32). Likewise, Plaintiff has spoken at the city council meetings

---

[2] Shortly after the incident, Sgt. Cruz completed a "Field Contact Form" where he explained: "Mr. Hill violated the decorum policy by becoming impertinent and boisterous while addressing the council. Mr. Hill was informed that he was trespassed." (DE 46 ¶ 21). Plaintiff did not receive a copy of this form. (Pl.'s Dep. at 62 ¶¶ 1–2).

at least sixteen times since December 2016, and has never been arrested, trespassed, or otherwise threatened for doing so. (DE 39 ¶¶ 33–34).

### F. Procedural History

On February 1, 2018, Plaintiff filed this action against the City of Homestead and its former Mayor Jeff Porter. (*See* Compl., DE 1). Pursuant to 42 U.S.C. § 1983, Plaintiff alleges violations of his constitutional rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution. (*See id.*). The City of Homestead now moves for summary judgment. (DE 40).

## III. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine dispute" means "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "material fact" means a fact "that might affect the outcome of the suit under the governing law." *Id.* In opposing summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Id.* at 252.

## IV. DISCUSSION

Plaintiff alleges that the Old Decorum Policy infringed upon his right to free speech under the First Amendment (Count II) and deprived him of due process of law under the Fifth Amendment (Count III). Plaintiff also alleges that the actions of the City police officers who "removed" and "detained" him amounted to state law false imprisonment (Count IV). Counsel for Plaintiff and the City stipulated to dismiss Mayor Porter as a defendant on September 11, 2019,

effectively eliminating Count I from Plaintiff's Complaint.[3] (DE 32). The City moves for summary judgment on the remaining counts.

**A. Free Speech Claims (Count II)**

In Count II, Plaintiff alleges that the Old Decorum Policy violated the First and Fourteenth Amendments by (1) imposing an unlawful prior restraint on speech,[4] and (2) using vague criteria to determine whether to bar a speaker from the city council meetings.[5] Count II requested a declaratory judgment holding the Old Decorum Policy unconstitutional on its face, seeking compensatory and punitive damages for Mayor Porter's alleged application of the Old Decorum Policy.

**1. Facial Challenge Under Count II**

Regarding the facial challenge under Count II, the Court finds that the claim is moot. The Supreme Court has observed that a facial challenge is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [law] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Indeed, "[t]he fact that [a law] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Id.*

Here, Count II of the Complaint alleges that the Old Decorum Policy, on its face, violates a speaker's First Amendment right to address the city council by "expressly conditioning the

---

[3] In Count I, Plaintiff asserted a claim against Mayor Porter in his individual capacity for suppression of speech by retaliatory arrest. (*See* Compl. at 8).

[4] *See, e.g., United States v. Frandsen*, 212 F.3d 1231, 1236–37 (11th Cir. 2000) ("A prior restraint on expression exists when the government can deny access to a forum for expression before the expression occurs.").

[5] *See, e.g., Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006) ("The vagueness doctrine is a component of the right to due process. But . . . vagueness in the law is particularly troubling when First Amendment rights are involved.").

exercise of those rights on the speaker meeting two behavioral criteria – (i) not 'making impertinent . . . remarks,' and (ii) not 'becom[ing] boisterous' – [both of which] are not defined in the Policy and are inherently vague." (Compl. ¶ 41(a)). Along with the vagueness allegations, Count II asserts that the Old Decorum Policy imposes an unconstitutional prior restraint on speech by "immediately and prospectively 'barr[ing]' any speaker determined by the Mayor to have violated the Policy 'from further audience before the council' unless the speaker obtains a 'majority vote of the council members present' granting him 'permission to . . . again address the council' at some time in the future." (*Id.* ¶ 41(b)). In the Motion for Summary Judgment, the City argues that the facial challenge to the Old Decorum Policy is moot since the policy has been repealed. (*See* Mot. Summ. J. at 4).

The record reflects that on April 20, 2016, the Old Decorum Policy was repealed and replaced with the passage of Resolution No. R2016-04-42. (DE 39 ¶ 1). Among other things, the resolution eliminated the challenged aspects of the Old Decorum Policy: namely, (1) "making impertinent remarks" and "becoming boisterous" as grounds for barring a speaker from the city council meetings, and (2) requiring a barred speaker to obtain approval by the majority of the city council members before returning to future city council meetings. (DE 39-1 at 4–6). Because the challenged provisions have been eliminated under the New Decorum Policy, Plaintiff's claim under the First Amendment is moot since it "no longer presents a live controversy with respect to which the court can give meaningful relief." *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993). *See also Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1310 (11th Cir. 2000) ("When a subsequent law brings the existing controversy to an end 'the case becomes moot and should be treated accordingly.'") (quoting *Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*, 777 F.2d 598, 605 (11th Cir. 1985)).

In response, Plaintiff relies on the "voluntary cessation" exception to the mootness doctrine. "Generally, a challenge to the constitutionality of a statute is mooted by the repeal of the statute[,] . . . [but] [a]n important exception to this general rule applies if there is a substantial likelihood that the challenged statutory language will be reenacted." *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1329 (11th Cir. 2004). However, "[b]ecause of the unique characteristics of public defendants, [courts] often give[] government actors more leeway than private parties in the presumption that they are unlikely to resume illegal activities." *Doe v. Wooten*, 747 F.3d 1317, 1322 (11th Cir. 2014) (internal quotations and citations omitted). "This presumption is particularly warranted in cases where," as here, "the government repealed or amended a challenged statute or policy—often a clear indicator of unambiguous termination." *Id.* Thus, "once a government actor establishes unambiguous termination of the challenged conduct, the controversy will be moot" unless the plaintiff demonstrates "some reasonable basis to believe that the policy will be reinstated if the suit is terminated." *Id.* (quotations omitted).

According to Eleventh Circuit precedent, whether the government is likely to reenact the challenged policy depends on three considerations. First, the court considers "whether the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate [the court's] jurisdiction." *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs, Ga.*, 868 F.3d 1248, 1257 (11th Cir. 2017). Second, the court analyzes "whether the government's decision to terminate the challenged conduct was 'unambiguous.'" *Id.* Third, the court asks "whether the government has consistently maintained its commitment to the new policy or legislative scheme." *Id.*

Notably here, the City repealed the Old Decorum Policy through a formal resolution. (*See* DE 39-1). This procedure reflects the considered judgment of a deliberative body. *Compare Flanigan's*, 868 F.3d at 1260 (challenge to a repealed ordinance was moot where "the City Council

8

voted on . . . the Ordinance's repeal . . . in open session during regularly scheduled meetings"), *with Jager v. Douglas Cty. Sch. Dist.*, 862 F.2d 824, 833 (11th Cir. 1989) (case was *not* moot where "the School District voluntarily ceased the practice of having pregame religious invocations delivered by Protestant ministers . . . [which] was not a formal policy") Also, the resolution was passed on April 20, 2016: nearly two years before Plaintiff filed this lawsuit and more than four months before the incident giving rise to this lawsuit even occurred. (*See* DE 39 ¶ 1). The Court therefore finds the repeal of the Old Decorum Policy to have resulted from substantial deliberation, not merely an effort to manipulate the Court's jurisdiction. For similar reasons, the Court also finds the repeal to be unambiguous; the City repealed the Old Decorum Policy during a public meeting through a formal resolution, and this resolution explicitly eliminated the challenged language from the New Decorum Policy. (*See* DE 39-1). And finally, the Court finds that the City has maintained its commitment to the New Decorum Policy; since January 2017, the Old Decorum Policy has not appeared on the agenda for any city council meeting. (DE 39 ¶ 11). Although Plaintiff emphasizes that the Old Decorum Policy remained printed at the top of the agenda for the August 24, 2016 meeting, that does not establish the City's intent to reenact the old policy. At best, it amounts to "mere speculation that the City may return to its previous ways." *Flanigan's*, 868 F.3d at 1256 (quotations omitted). That alone is insufficient to avoid mootness.[6]

---

[6] While Plaintiff points out that the City has made no promise not to return to the Old Decorum Policy (Pl.'s Resp. at 7), the mootness doctrine has never required such a promise. Instead, the relevant inquiry is whether the plaintiff has shown a reasonable expectation that the City will return to the challenged policy. Here, Plaintiff has made no such showing. The facial challenge under Count II is therefore moot.

## 2. As-Applied Challenge Under Count II

To the extent that Plaintiff asserts an as-applied challenge under Count II, that claim fails as a matter of law.[7] "An as-applied First Amendment challenge contends that a given statute or regulation is unconstitutional as it has been applied to a litigant's particular speech activity." *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 608 F.3d 1084, 1096 (9th Cir. 2010). As the Supreme Court has explained, "a statute or a rule may be held constitutionally invalid as applied *when it operates to deprive an individual of a protected right.*" *Boddie v. Conn.*, 401 U.S. 371, 379 (1971) (emphasis added).

However, the record in this case does not establish the deprivation of a "protected right" under the First Amendment. Rather, the record reflects that Plaintiff spoke for the full three minutes during the public comment portion of the meeting held on August 24, 2016. (DE 39 ¶ 15). Indeed, it was only after Plaintiff finished speaking and returned to his seat that he was removed from the city council meeting. (*Id.* ¶ 16). Following a brief discussion outside City Hall, Plaintiff was then informed that he "was being trespassed." (*Id.* ¶ 24). But Plaintiff never received a copy of this trespass order, and he was never told that he needed permission to return to future city council meetings. (*Id.* ¶¶ 24–26; Pl.'s Dep. at 62 ¶¶ 1–23). In short, Plaintiff was never prevented from speaking before the city council. (*See, e.g.*, DE 39 ¶ 12). The record instead shows that Plaintiff voluntarily refrained from attending the subsequent city council meetings because he merely *assumed* that he would be arrested if he returned. (DE 46 ¶ 25). That, without more, does not establish the deprivation of the right to free speech under the First Amendment. *Cf. Pesek v.*

---

[7] As Plaintiff correctly notes, "[t]he Eleventh Circuit has confirmed that the target of a plaintiff's claim and the nature of the relief sought is paramount, not the facial versus as-applied label." *Rubenstein v. Fla. Bar*, 72 F. Supp. 3d 1298, 1309 (S.D. Fla. 2014). Even so, the Court finds that Plaintiff's allegations fail as a matter of law regardless of whether the Court characterizes those allegations as facial or as-applied challenges.

*City of Brunswick*, 794 F. Supp. 768, 785 (N.D. Ohio 1992) ("[I]nasmuch as [Plaintiff] sought to express his views on an agenda item at an open City Council meeting, the court finds that he was deprived of his first amendment right of free speech when the Brunswick City Council *selectively denied him the right to express these views* on April 15, 1991.") (emphasis added). The City is therefore entitled to summary judgment on Count II.

## B. Due Process Claims (Count III)

Count III alleges that the Old Decorum Policy violates the Due Process Clause of the Fifth and Fourteenth Amendments because it "authorized the Mayor to determine that a speaker should be 'barred from further audience' without providing any process for challenging that determination and/or for obtaining permission to reappear before that body in the future." (Compl. ¶ 55(B)). To the extent that Count III alleges a facial challenge under the Fifth Amendment, that claim is moot for the reasons explained above. And to the extent that Count III alleges an as-applied challenge under the Fifth Amendment, that claim also fails as a matter of law.

To prove a procedural due process violation, as Plaintiff attempts to do here, a plaintiff must establish the following elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir. 2006) (citation omitted). In this case, Count III alleges that Plaintiff was deprived of "his liberty interest in appearing before the Homestead City Council meetings." (Compl. ¶ 48). According to Plaintiff, this deprivation occurred when Mayor Porter applied the Old Decorum Policy to "prospectively bar" Plaintiff from future city council meetings. (*Id.* ¶ 52). The undisputed record belies this allegation.

Nothing in the record suggests that Plaintiff was barred from attending the future city council meetings. To the contrary, Plaintiff simply *assumed* that he was barred from attending the

11

future meetings based on his interpretation of the text of the Old Decorum Policy, along with his understanding of the related incident involving Mr. McDonough. (DE 46 ¶ 25). But at no point was Plaintiff ever told that Sgt. Cruz's trespass order was issued pursuant to the Old Decorum Policy, nor was Plaintiff ever told that he needed permission to return. (DE 39 ¶¶ 25–26). Nor did the City ever refuse to let Plaintiff attend a city council meeting. (*See generally id.* ¶ 32).

Instead, after Plaintiff's attorney contacted the City for the first time two months after the encounter, she was informed by the city attorney that there were no restrictions on Plaintiff's ability to attend the city council meetings "other than those applicable to the general public." (*Id.* ¶¶ 28–29). Absent the deprivation of a liberty or property interest, a procedural due process claim cannot stand. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). So too here. The City is therefore entitled to summary judgment on Count III.

### C. False Imprisonment (Count IV)

Count IV alleges false imprisonment under Florida law for the conduct of the Homestead police officers who removed Plaintiff from City Hall, "physically restrained and detained" him, and surrounded him "until he departed from [City Hall] in fear of being arrested for trespass." (Compl. ¶ 59). "In Florida, the tort of false imprisonment is defined as 'the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty.'" *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1116 (11th Cir. 2006) (quoting *Escambia Cty. Sch. Bd. v. Bragg*, 680 So. 2d 571, 572 (Fla. Dist. Ct. App. 1996)). "The plaintiff must, however, show that the restraint was unreasonable and unwarranted under the circumstances." *Turner v. Charter Schs. USA, Inc.*, No. 18-24005-CIV,

12

2020 WL 620392, at *9 (S.D. Fla. Jan. 14, 2020) (quotations omitted), *report and recommendation adopted by* 2020 WL 924253. Critically, "[a] plaintiff is not restrained when there is a reasonable means of escape, which is apparent or known to the person." *Ali v. Margate Sch. of Beauty, Inc.*, No. 11-60102-CIV, 2011 WL 4625372, at *5 (S.D. Fla. Oct. 3, 2011).

Here, the record is clear that Plaintiff was never handcuffed, restrained, or arrested during the encounter with the Homestead police officers on August 24, 2016. (DE 39 ¶ 22). In fact, Plaintiff admits he was free to leave City Hall that day. (*Id.* ¶ 23); *see* Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."). Thus, no reasonable jury could find in favor of Plaintiff on his claim for false imprisonment. The City is therefore entitled to summary judgment on Count IV.

Accordingly, it is **ORDERED, ADJUDGED, and DECREED** that:

1. Defendant's Motion for Summary Judgment **(DE 40)** be, and the same hereby is, **GRANTED**;

2. Pursuant to Rule 58(a) of the Federal Rules of Civil Procedure, final judgment in favor of the City of Homestead will be set out in a separate order; and

3. All pending motions are **DENIED AS MOOT**;

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 6th day of March, 2020.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc: All Counsel of Record
Clerk of Court

13